Cram v. Burnham.

## CRAM vs. BURNHAM.

Cohabitation, known to be adulterous in its origin, a former wife being still alive, conveys no right to the guilty parties, against third persons ; nor does the continuance of such cohabitation, after the death of the lawful wife, afford legal presumption of a subsequent marriage.

ASSUMPSIT on a promissory note made by the defendant's intestate, payable to *Maria Cram*, alleged to have been then, and still to be, the wife of *Jacob Cram* the plaintiff.

At the trial before *Preble J.* it appeared that the marriage of the plaintiff with his reputed wife, if it was legal, was duly solemnized in this county *Sept.* 3, 1815 ; since which time they had continued to dwell together, and were the parents of a family of children.    But it was also proved that in 1796 he was lawfully married to another wife at *Weare*, in New Hampshire, with whom he cohabited till 1812, when he left her, and came to reside in *Limerick* in this county, in the immediate neighborhood of the woman he afterwards married ; and that his first wife was living at *Weare*, at the time of the second marriage, and till *Jan.* 29, 1816 ; of which facts the second wife had full knowledge.    It also appeared that the note in suit was given for part of the purchase-money of a parcel of land conveyed by *Cram* to the intestate, and was made payable to the wife to induce her to sign the deed with him, as his wife, relinquishing her right of dower ; and that in another deed given to the intestate, and in a receipt taken by him, he had recognized *Maria* as the wife of *Jacob Cram*.

Upon these facts a verdict was taken for the plaintiff, subject to the opinion of the court, upon the question, whether the plaintiff could maintain the action in his own name.

*N. Emery* and *D. Goodenow*, for the defendant, contended that the second marriage, while the first subsisted, was merely void ; and therefore conveyed no rights whatever to the husband.    It did not make them husband and wife.    *Reeve's Dom. Rel.* 102.    Cohabitation, at most, is but evidence *prima facie* of marriage.    *Newburyport v. Boothbay* 9. *Mass.* 414.    But here it is rebutted by the evi-

dence adduced. · The issue of such second marriage is illegitimate. *Reeve* 237. The second wife may be a witness, upon an indictment of the husband for bigamy, after proof of the first marriage. 1. *Phil. Ev.* 70.

And if the marriage was thus void, no subsequent act of the parties could make it good, by way of ratification, after the death of the first wife. No lapse of time, or assent of parties, can make a marriage, without the formalities of law ; however they may be regarded, in the absence of opposing testimony, as evidence of a marriage previously had. If the previous marriage is proved, there is no room for presumption ; and no new relation of that kind can be created, while the former exists in all its force. *Cro. El.* 858. *Peake's cases* 39. *Morris v. Millar* 4. *Burr.* 2057. 3. *Camp.* 438. 4. *Camp.* 215.

*J. Shepley*, for the plaintiff, said that no action whatever could be sustained upon the note, unless the present suit was supported ; as the plaintiff and his wife would be estopped, by the deeds, to deny the marriage, should it be shown against an action brought by her as a *feme sole*. And to shew that the marriage was good, after the death of the first wife, in all cases except indictments for bigamy, adultery, and the like, he cited 1. *Com. Dig. tit. Baron & Feme B.* 1. *Fenton v. Reed* 4. *Johns.* 52. And he further contended that the intestate, having taken their deed and receipt, as husband and wife, ought not now to be admitted to avoid the payment of the purchase-money by this defence.

WESTON J. delivered the opinion of the Court.

In order to sustain this action, it is incumbent on the plaintiff to prove that he is the husband of the woman, who, in the note declared on, is called *Maria Cram*. It is in evidence that they have cohabited together, and that they claim to stand to each other in the relation of husband and wife.

In most cases, cohabitation, as husband and wife, is evidence from which the law presumes a lawful marriage. So also where the presumption may be repelled, it will fix upon the party, who thus holds

Cram *v.* Burnham.

himself out to the world in the character of a husband, liabilities as it respects others, which attach to this relation.

There is another class of cases, where the parties, without any imputation upon their innocence or purity, live together in the fullest belief that they are lawfully married ; although in fact the marriage may not be lawful, from a want of authority in the person by whom it may have been solemnized, or from some other legal defect in point of form. These have often been recognised as marriages *de facto ;* from which, to a certain extent, rights and duties may arise, as it respects both the parties themselves and their children. If the plaintiff had relied upon cohabitation alone, as evidence of a legal marriage, it might have justified the presumption that a lawful marriage had taken place, when he might lawfully enter into that connexion. He however introduces and relies upon proof of the solemnization of his marriage, at a certain period. It fully appears that at that time, he being the husband of another woman, then in full life, this pretended marriage was clearly void.

Until the death of the lawful wife, their cohabitation was lewd and lascivious ; and would have subjected him to severe punishment, and *Maria Adams* also, if conusant of the first marriage, and that his lawful wife was still alive. After her death, their cohabitation, although not attended with a breach of marriage vows, was still an offence against decency and good morals, for which they would have been liable to a legal prosecution. It is in proof, that the nature and circumstances of their connexion were known to the neighborhood ; and that neither party made any secret of the facts, by which its criminality was made apparent. If the plaintiff can predicate rights upon a course of conduct thus flagrant, as well might he do it if his lawful wife had resided in the same town. If she had been unfaithful, and that fact had been verified before the proper tribunal, he might have been legally absolved from the obligation he had assumed. But a mere pretence of this sort, which he appears to have set up, and which might have been altogether without foundation, afforded him no justification whatever. Having neglected the duties of a husband, towards her to whom they were rightfully due, having violated his marriage vows, and openly lived in an adulterous connexion with

Cram v. Burnham.

another woman ; in the face of these facts, he now claims, in rela-tion to her, the rights and prerogatives of a husband ; in consequence of a pretended solemnization of marriage, which he knew to be void. To sustain a claim of this sort, would comport neither with public policy, with good morals, nor with law. The plaintiff might be liable to others, as the husband of *Maria Adams* ; but it is one thing to incur liabilities, and another to establish rights.

In the case of *Fenton v. Reed*, cited in the argument, the right of the original plaintiff was not predicated upon an unlawful connexion then continuing, like the case before us ; but upon one believed to be innocent in its commencement, and, under the circumstances, not liable to be prosecuted as an offence, and which had ceased by the death of him, whom the plaintiff regarded as her second husband. Even there, the court pronounced the second marriage void ; but sustained her demand, which they probably deemed equitable upon the merits, upon the ground that subsequent to the death of the first husband, another marriage might be presumed. In the case before us, no such presumption can arise. The plaintiff does not depend upon presumption. The marriage upon which he relies, and of which he furnished formal proof, is that solemnized before the death of his lawful wife, and which is therefore inoperative and void. The court in New York say that a contract of marriage, made *per verba de presenti*, amounts to an actual marriage, without any formal sol-emnization. They cite the case of *McAdam* and *Walker*, in the house of Lords, 1 *Dow*, 148, which was an appeal from the Court of Sessions in *Scotland*, where Lord *Eldon* states the law in the same manner ; which he says is warranted by the law of *Scotland*, and by the canon law. It might deserve great consideration, whether a doctrine thus broad would be sanctioned in this State.

In *Cunninghams* and *Cunninghams*, also in the house of Lords, on an appeal from the court of Session in Scotland, 2 *Dow*, 482, which is to be found in a note to 4 *John* 53, Lord *Eldon* and Lord *Redes-dale* held " that in cases of cohabitation, the presumption was in favor of its legality ; but where it was known to have been illicit in its origin, that presumption could not be made." And such is the case now under consideration.

Parsonsfield *v.* Dalton.

As to the argument that the defendant's intestate, by giving the note to the woman by the name of *Maria Cram*, recognized her as the wife of the plaintiff, he might not have known the circumstances of their connexion ; and his administratrix is well justified in requir-- ing proof of the plaintiff's legal title to the note in question.

*New trial granted.*